IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DANIELLE AILTS CAMPEAU,
Individually and on behalf of all
other similarly situated individuals,

                          Plaintiff,                          OPINION & ORDER

        v.                                                    14-cv-324-jdp

NEUROSCIENCE, INC., and
PHARMASAN LABS, INC.,

                          Defendants.

Plaintiff Danielle Ailts Campeau contends that her former employers, defendants NeuroScience, Inc. and Pharmasan Labs, Inc., paid her and other female employees less than male employees with similar experience, responsibility, and seniority. In this suit, Campeau alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, and the Equal Pay Act (EPA), 29 U.S.C. § 206. Defendants have counterclaimed against Campeau for breach of a tuition reimbursement agreement.

Campeau brings this action on behalf of herself and of all current and former female employees who worked for defendants from August 1, 2011, to present. Because this suit attempts to vindicate the rights of others, as well as Campeau herself, the case enters the realm of collective and class actions, prompting the two preliminary motions now before the court. Campeau moves for conditional class certification for her EPA collective action claims. Dkt. 16. Defendants move to dismiss Campeau's Title VII class action claims. Dkt. 37. The court will grant both motions.

ALLEGATIONS OF FACT

The parties have not yet undertaken discovery, so to support their motions, both sides have submitted affidavits, documentary evidence, and narrative accounts of the relevant events. Given the early stage of the case, the court accepts Campeau's allegations as true, and draws the following facts from her complaint and supporting materials. *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013) ("[W]here the parties' evidentiary submissions directly conflict, they will be resolved—for purposes of this order only—in plaintiffs' favor.").

Campeau began working for NeuroScience in 2007, as a Technical Support Specialist. Three years later, she was asked to take on the position of Technical Services Supervisor at Pharmasan, without any additional compensation. The parties do not explain whether there is a formal relationship between the two companies, although defendants contend that they are owned and operated by Mieke Kellermann and her husband, Gottfried Kellermann. Campeau alleges that both companies' physical operations, assets, and employees are located at the same address in Osceola, Wisconsin. Whatever the connection, Campeau alleges that both defendants were her "employers" for purposes of Title VII and the EPA. Defendants fired Campeau in 2014, allegedly in retaliation for the complaints she vocalized about unfair treatment of a fellow female employee. Campeau's termination, however, is not the subject of this suit.

At several times during her employment, Campeau was asked to take on additional responsibilities, fill new roles, and supervise additional employees. She accepted each of these assignments; sometimes with a corresponding salary increase, but oftentimes with no raise. Campeau bases her individual discrimination claims on the assertion that she was consistently paid less than defendants' male employees with similar experience, responsibility, and seniority.

With regard to the collective action and class action claims, Campeau alleges that defendants implemented company-wide policies and practices that resulted in large-scale unequal compensation for women. Specifically, Campeau alleges that a small, predominately male group of supervisors was responsible for compensation decisions at NeuroScience and Pharmasan, and so all similarly situated female employees were injured by the same management structure. Moreover, Campeau alleges that defendants fostered a culture of discrimination against women through unequal pay and unwelcome sexual comments by supervisors. With her motion to conditionally certify the class, Campeau has included affidavits from three "opt-in" plaintiffs who are willing to join her suit. These three employees or former employees, all women, recount similar discriminatory conduct and examples of unequal pay.

ANALYSIS

Although the two motions before the court touch on the same subject matter, they involve distinct legal issues. For the EPA claims, Campeau has made a modest factual showing that she and other female employees were affected by the same discriminatory practices. The court will therefore conditionally certify her class. Campeau cannot proceed with her Title VII class action claims, however, because she has not satisfied the statute's administrative exhaustion requirements. The court will grant both of the pending motions. The court will also direct the parties to submit an amended notice to send to putative members of Campeau's collective action.

**A. Campeau's motion to conditionally certify an EPA class**

**1. Conditional certification**

The EPA is part of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, under which an employee may bring a "collective action" against an employer on behalf of herself and

"other employees similarly situated." § 216(b); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The FLSA further provides that potential class members must "opt in" to such collective actions by filing a written consent to join. § 216(b); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982). This court, like others, uses a two-step approach to collective actions under the FLSA. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014); *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008). First, the court determines whether to conditionally certify a class. This step focuses on whether Campeau can show that the there is "'some factual nexus' [that] connects her to other potential plaintiffs as victims of an unlawful practice." *Berndt*, 2013 WL 3287599, at *6. Second, after discovery and upon a motion for decertification from the defendant, the court determines whether the plaintiffs who have opted into the suit are "similarly situated." *Bitner*, 301 F.R.D. at 358. If not, the court decertifies the class, and the case does not proceed as a collective action.

Defendants ask the court to deviate from the typical procedure. Defendants contend that the court can combine the two inquiries in this case because at the second step, Campeau will not be able to show that her proposed class members are "similarly situated." Dkt. 35, at 11-19. Defendants direct the court to *Purdham v. Fairfax County Public Schools*, in which a district court from outside this circuit held that "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate . . . a court can collapse the two stages of the analysis and deny certification outright." 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). Even if defendants are correct that the court *can* combine the inquiries, the procedural posture of this case makes the suggestion inappropriate. In *Boelk v. AT & T Teleholdings, Inc.*, this court cited *Purdham*, undertook both steps at once, and denied conditional class certification. No. 12-cv-40,

2013 WL 261265, at *14 (W.D. Wis. Jan. 10, 2013). But the court did so only after observing that

> the parties have conducted significant discovery. The record contains several declarations from field technicians, depositions of all six named plaintiffs, depositions of two individuals who consented to opt in should a class be certified, and a Fed. R. Civ. P. 30(b)(6) deposition by plaintiffs. Under the circumstances, it is appropriate to apply more scrutiny to plaintiffs' claim *than would normally be applied at the conditional certification stage*.

*Id.* (emphasis added). Although the parties have offered affidavits and some documentary evidence in support of their respective positions, the record here is far less developed than it was in *Boelk*. Thus, the court will not merge the two steps in this case.

Campeau's motion requires the court to complete only the first step in its two-part analysis. At this stage, Campeau must "make a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Bitner*, 301 F.R.D. at 357 (internal citations and quotation marks omitted). Campeau's burden is minimal; the standard is "fairly lenient" and does not involve "adjudicating the merits of the claims, nor the kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23." *Berndt*, 2013 WL 3287599, at *7. Defendants correctly observe, however, that conditional class certification is not a "mere formality." Dkt. 35, at 9 (quoting *Berndt*, 2013 WL 3287599, at *7). Generally, this court would require Campeau to come forward with "admissible evidence that the potential class members are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers." *Berndt*, 2013 WL 3287599, at *7. After reviewing the parties' submissions, the court concludes that Campeau has cleared this initial hurdle.

Campeau's allegations, supported by her declaration and the declarations of three additional proposed opt-in plaintiffs, suggest gender-based inequity in defendants' overall

compensation practices. The proposed collective action claim alleges that defendants had a small, centralized group of decision makers who had final approval of pay decisions and whose actions resulted in unequal compensation based on gender. The opt-in plaintiffs' declarations and Campeau's own declaration identify instances of pay discrepancies and describe a hostile attitude toward women who worked for defendants.[1] Campeau's affidavit also states that she

> approached Human Resources on at least three separate occasions to file complaints with regard to [her] unequal pay. On more than one occasion, the HR department told [her] that the companies would be "in big trouble" if anyone decided to turn them over to the authorities and launch an investigation of the compensation structure of the company.

Dkt. 21, ¶ 20.

Defendants are right that some statements in Campeau's supporting declarations would not meet strict evidentiary standards because they are conclusory or not based on personal knowledge. For example, the declarations often state that the declarant "discovered" or "came to learn" that a male counterpart made more money than she did. *See, e.g.*, Dkt. 21, ¶¶ 14, 17, 18; Dkt. 22, ¶ 7; Dkt. 23, ¶ 7; Dkt. 26, ¶ 4. But the declarations do not explain how the declarant made her discovery, or how the declarant has personal knowledge of other employees' salaries and qualifications.

District courts within the Seventh Circuit are divided on the question of whether declarations in support of a motion for conditional certification must comply with the Federal Rules of Evidence. *See Adair v. Wis. Bell, Inc.*, No. 08-cv-280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008) (collecting cases). But this court generally requires compliance. *Berndt*,

---

[1] Defendants respond with evidence that Campeau's male comparators are not similarly situated because they had more experience, education, or seniority. Dkt. 30. This evidence may cast doubt on the merit of Campeau's individual claims and may even indicate that this case contains the kinds of individualized inquires that would preclude class certification at the second step. At this stage of the case, however, defendants' evidence is largely irrelevant.

2013 WL 3287599, at *3; *see also Sjoblom v. Charter Commc'ns, LLC,* No. 07-cv-451, 2007 WL 4560541, at *10 (W.D. Wis. Dec. 19, 2007), *amended on reconsideration,* 2008 WL 4547526 (W.D. Wis. Jan. 2, 2008). Thus, Campeau cannot rely on mere conclusory allegations to support conditional class certification. *See, e.g.*, Dkt. 21, ¶ 13 ("I was significantly underpaid compared to multiple male employees who held significantly less responsibility and had less education and experience, but whom were paid significantly more than me.").

But given the early stage of the case, the court will afford Campeau some leeway with her statements about the compensation and qualifications of other employees. An EPA plaintiff will not often have first-hand knowledge of the salaries and qualifications of other employees, and without the benefit of discovery, the plaintiff will have little non-hearsay evidence to support her claim that she was paid less than men were. Thus, at this point in the proceeding, the court will allow Campeau to support her motion for certification with statements made "on information and belief," so long as some basis for that belief is articulated. Moreover, other courts have allowed conditional certification on the basis of similar information on the theory that personal knowledge includes reasonable inferences about the treatment of one's co-workers. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[P]ersonal knowledge may include reasonable inferences, [but] those inferences must be grounded in observation or other first-hand personal experience."). Thus, the court concludes that Campeau's supporting declarations address matters that Campeau and the opt-in plaintiffs likely observed or came to learn through their first-hand experiences, and are therefore sufficient at this point. Evidence adduced in support of step two of the certification process, however, must fully comply with the rules of evidence.

The record contains sufficient evidence for Campeau to make a "modest factual showing," that she and other similarly situated female employees were the victims of

discriminatory compensation practices. Conditional class certification is appropriate, and the court will grant Campeau's motion.

### 2. Proposed notice

Campeau submitted a proposed class notice with her motion for conditional class certification. Dkt. 25. She defines her proposed class as: "all current and former female employees who worked for NeuroScience, Inc. and Pharmasan Labs, Inc. from August 1, 2011 to present." *Id.* at 1. Campeau seeks: (1) a 120-day notice period by which opt-in plaintiffs must respond; (2) permission to send two reminder letters during the notice period; (3) an order requiring defendants to produce the names, addresses, telephone numbers, e-mail addresses, positions, and dates of employment for each putative class member; and (4) an order requiring defendants to post her notice at their headquarters in Osceola, Wisconsin.

District courts have discretion to craft and facilitate the notice and other communications that a named plaintiff sends to potential plaintiffs. *Hoffmann-La Roche Inc.*, 493 U.S. at 169. Yet, "'courts must be scrupulous to respect judicial neutrality' and to avoid 'even the appearance of judicial endorsement of the merits of the action.'" *Jimenez v. GLK Foods LLC*, No. 12-cv-209, 2013 WL 3936928, at *4 (E.D. Wis. July 30, 2013) (quoting *Woods*, 686 F.2d at 580). Although the court will conditionally certify a class for Campeau's collective action claims, defendants raise several valid objections to her proposed notice. The court will address these objections and direct the parties to submit a revised notice.

First, defendants object to Campeau's proposed class as overbroad because it includes "all female employees," and may lead readers to join the suit even if they have not suffered unequal pay discrimination. Defendants further assert that the notice should only extend back three years prior to the date of the notice, rather than to August 2011. Campeau concedes the second point but not the first. Dkt. 36, at 15. Defendants' objection regarding over-breadth largely

rehashes their concern that Campeau cannot proceed with her collective action claims because the potential class members are not similarly situated. This argument may be relevant at the decertification stage, when defendants can show that individualized questions of law or fact predominate Campeau's collective action claims. *See Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 606 (W.D. Wis. 2006) ("Defendant's arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review."). But Campeau's proposed notice allays any concerns about dissimilar plaintiffs blindly opting into this case because it advises readers that "[i]f you fit the definition above *and do not believe you were paid fairly on account of your gender,* you are eligible to participate in the lawsuit." Dkt. 25, at 2 (emphasis added). Campeau must amend her notice to include only female employees who worked for defendants within three years of the date of the notice, but the rest of defendants' first objection does not require altering the notice.

Second, defendants object to Campeau's proposed 120-day period by which readers must respond, and to Campeau's request for two reminders. Defendants contend that a 60-day period with zero reminders would be sufficient. Campeau agrees to a 60-day period, but insists on one reminder. Dkt. 36, at 15. A reminder is not necessary in this case. "The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Witteman v. Wis. Bell, Inc.*, No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010); *see also Schroeder v. Humana Inc.*, No. 12-cv-137, 2012 WL 5931886, at *9 (E.D. Wis. Nov. 27, 2012) ("[A] reminder is unnecessary and may even be misinterpreted as judicial encouragement to join the lawsuit."). Campeau's notice must therefore be amended to provide a 60-day period with zero reminders.

Third, although defendants do not object to producing the names and last known addresses of putative class members, they contend that they should not have to produce any additional information. Campeau agrees to withdraw her request for telephone numbers and e-mail addresses. Dkt. 36, at 15-16. Defendants further demand a protective order to limit Campeau's counsel's use of the information, and they ask for 14 days to respond to any request for information about their employees.[2] The court will grant both requests, but defendants must submit a formal motion for a protective order explaining exactly how they want the court to restrict Campeau's use of the requested information.

Fourth, defendants object to an order requiring them to post Campeau's notice in their headquarters. Campeau agrees to withdraw the request. *Id.* at 16.

Fifth, defendants ask Campeau to include in her notice a statement that they completely deny her allegations of discriminatory treatment. Campeau agrees to include such a statement, *id.*, and her notice must be amended accordingly.

Sixth, defendants ask Campeau to include a statement in her notice that the class has been *conditionally* approved. Campeau agrees to include such a statement. *Id.* Defendants also contend that Campeau must re-word her notice to state that "the court has made no decision in this case about the merits of plaintiff's claims or defendants' defenses." Dkt. 35, at 33. The court agrees that such a statement would be appropriate, and Campeau's notice must be amended accordingly.

Seventh, defendants contend that Campeau's notice improperly requires potential plaintiffs to agree to representation by her attorney's firm. Defendants assert that Campeau must inform readers of their right to select separate counsel, bring a separate action, or not to

---

[2] Defendants have not submitted a proposed order or explained how they want the court to restrict Campeau's use of the information.

sue at all. Campeau agrees to include such language, Dkt. 36, at 16, and her notice must be amended accordingly.

Finally, defendants observe that Campeau's notice does not mention the potential consequences of choosing to opt-in. Specifically, opt-in plaintiffs may have to sit for a deposition, respond to discovery requests, or testify in court. They may also have to pay a share of defendants' fees and costs if the lawsuit is unsuccessful. Campeau responds that including this language amounts to a scare tactic, and the court agrees with her assessment. Parading a list of unpleasant consequences may chill otherwise legitimate interest in joining this collective action. Campeau's attorney will be responsible for informing all opt-in plaintiffs of the potential consequences of joining this suit, and defendants' objection does not require altering the notice.[3]

Campeau has expressed a willingness to coordinate with defendants regarding amendments to her notice. The parties may therefore have 10 days from the date of this order to confer and submit a revised proposed notice. The revised notice must incorporate the above rulings on defendants' objections, and the parties should make every effort to stipulate to the wording and content of the notice. If there is disagreement, each party must submit its own version of the section in dispute so that the court can approve a final notice as soon as possible.

## B.  Defendants' motion to dismiss the Title VII class action claims

Apart from contesting conditional class certification for Campeau's EPA claims, defendants have moved to dismiss the Title VII class action claims. Defendants contend that the charge that Campeau filed with the Equal Employment Opportunity Commission (EEOC) did

---

[3] Defendants also observe that Campeau's notice contains an oversight in its "No Retaliation Permitted" section. Campeau agrees that the language was mistakenly included, Dkt. 36, at 17, and her notice must be amended accordingly.

not put defendants on notice of her intention to file a lawsuit containing allegations of class-wide discrimination. Thus, according to defendants, Campeau cannot proceed with class action claims in this court. Campeau responds that the language in her charge adequately warned defendants that she intended to assert claims on behalf of herself and others. But Campeau's charge is not as broad as she believes, and the court will grant defendants' motion.

The purpose of Title VII's administrative exhaustion requirement is to give a would-be plaintiff and her employer an opportunity to settle their dispute through conciliation, and to put the employer on notice that its employee has been aggrieved by certain conduct. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). From this purpose flows the "general rule [that] a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Id.* (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974)). The Seventh Circuit applies this rule to proposed class actions as well, and a Title VII plaintiff may not bring class action claims when "[n]either the [EEOC] charge nor the ensuing investigation put [defendants] on notice of the plaintiffs' intention to file a lawsuit containing allegations of class-wide discrimination." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127-28 (7th Cir. 1989)).[4]

The court construes a plaintiff's charge liberally, and the document does not need to contain the magic words "class action." Nevertheless, a charge must put the employer on notice

---

[4] In her brief in opposition to defendants' motion to dismiss, Campeau relies on *Horton v. Jackson County Board of County Commissioners*, 343 F.3d 897 (7th Cir. 2003), and the "single-filing" rule to determine whether her EEOC charge can support class action claims. But the single-filing rule applies to would-be plaintiffs who seek to intervene in a lawsuit; this is not the issue that Campeau currently faces in this case. Indeed, as the Seventh Circuit explained in *Horton*, "[t]he usual formulation is that if the would-be intervenor's claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which he wants to intervene, his failure to file a timely charge will be disregarded." *Id.* at 899. *Horton* does not supplant *Schnellbaecher*'s requirement that the original plaintiff file an EEOC charge which puts her employer on notice of possible class action litigation.

that the employee is alleging discrimination against more than just herself. *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1017 (7th Cir. 1988); *Ruiz v. Adecco Emp't Servs.*, No. 02-cv-1302, 2002 WL 31427454, at *1-2 (S.D. Ind. Oct. 25, 2002). In this case, Campeau submitted a one-page charge to the EEOC. The substantive portion of her charge states that:

> I began employment with the above named Respondent in May 2007 as a Technical Support Specialist. My most recent position was that of Senior Project Manager (since April 2013) and Manager, Clinical Support. No less than four (4) separate times did I approach human resources and complain that I was denied raises and paid a lower salary than similarly situated males because of my sex, female. On February 13, 2014, I was discharged.

> I believe that the Respondent has discriminated against me on the basis of my sex, female when I was denied raises, paid a lower salary than similarly situated males in violation of Title VII of the Civil Rights Act of 1964, as amended, including sections 704(a) and the Equal Pay Act of 1963.

Dkt. 40-2.

Defendants correctly observe that Campeau does not use any "collective" language; instead, she exclusively describes events that occurred only to her, individually (*i.e.*, "*I* was denied raises," "Respondent has discriminated against *me*."). Other district courts have reviewed EEOC charges with this type of "singular" language and held that they do not adequately give notice of class action claims. *See, e.g.*, *Vasich v. City of Chi.*, No. 11-cv-4843, 2013 WL 80372, at *5 (N.D. Ill. Jan. 7, 2013) ("[C]harges of discrimination did not suffice to give the City notice of class-wide claims [when they] spoke only of discrimination against the charging woman herself, using the pronouns 'I' and 'my,' exclusively. Not one of them referred to any other applicants or to discrimination against women in general."); *Bluford v. Swift Transp.*, No. 11-cv-6932, 2012 WL 1755772, at *6 (N.D. Ill. May 16, 2012) ("Bluford's EEOC Charge does not include any allegations of class-wide discrimination. Bluford's Charge states only that '*I* have been harassed on numerous occasions by Donavon and by younger employees who work there.

Also, because *I* gross more pay than them; they have Retaliated against *me*. *I* believe that *I* have been discriminated against on the basis of *my* Race, Black and Retaliated against.'") (original emphasis).

Campeau responds that "[i]t is hard to imagine how allegations of sex-based pay disparity, i.e., discrimination *based on a class of people*, could not put Defendants on notice of a potential *class action*. It is also unreasonable to expect that Ms. Campeau use any more precise language." Dkt. 44, at 5 (original emphasis). But this argument effectively reads *Schnellbaecher* out of existence. Every EEOC complaint will allege discrimination because of the complainant's membership in a protected class, and would, under Campeau's theory, necessarily clear the way for later class actions. The court of appeals has foreclosed this argument. Campeau's charge states only that *she* was discriminated against because of *her* membership in a particular class. She does not alert the EEOC to large-scale discrimination or describe how women in general suffered because of defendants' practices.

*Schnellbaecher* does not require that Campeau provide a detailed narrative in her charge, but she must give defendants some indication that her charge addresses more than just individualized treatment. Decisions from other district courts in this circuit are again instructive on the types of charges that provide an employer with adequate notice of a possible class action. These decisions underscore the need for collective or plural language in the charge. *See, e.g.*, *Wiginton v. Ellis*, No. 02-cv-6832, 2003 WL 21037874, at *3 (N.D. Ill. May 6, 2003) (charge stated that "[m]anagement personnel and other male employees have also sexually harassed, and continue to sexually harass, *other female employees* by making sexual advances to them at work, commenting on the sexual attributes *of women's* body parts") (original emphasis); *Ruiz*, 2002 WL 31427454, at *3 (charge stated that "*Latino* or *Hispanic applicants were* handed an abbreviated, one-page, one-sided paper application[]. . . . *All of the Hispanics* were given the shortened

14

abbreviated application. I believe that the type of application an applicant received was based solely on whether the applicant looked Hispanic and/or their color"). Because Campeau's charge lacks similar statements indicating more than just individualized instances of discrimination, it fails to provide defendants with adequate notice of a potential class action. Under *Schnellbaecher*, defendants' motion to dismiss must therefore be granted.

ORDER

IT IS ORDERED that:

1. Plaintiff Danielle Ailts Campeau's motion for conditional class certification, Dkt. 16, is GRANTED.

2. The parties are directed to confer and amend the proposed class notice, Dkt. 16-5, as outlined in the opinion above. The parties must submit a revised proposed notice no later than January 26, 2015.

3. Defendants NeuroScience, Inc. and Pharmasan Labs, Inc.'s motion to dismiss, Dkt. 37, is GRANTED. Plaintiff's Title VII class claims are dismissed with prejudice.

Entered January 15, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge